[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE: MOTION FOR SUMMARY JUDGMENT (No. 154)
The issue in this case arises out of a contractual arrangement that is common in the trucking industry. Defendant Robert Braun owned a Peterbilt tractor truck which he leased to defendant Marck Express Company (Marck). Under the terms of the lease, Braun was required to haul cargo at Marck's direction.
Marck obtained and paid for liability insurance to cover the vehicle when it was being used to haul cargo. This type coverage is commonly known as trucking insurance. Braun paid for liability insurance to cover the vehicle when he was using it for nontrucking purposes, such as personal transportation. This type coverage is known as nontrucking or "Bobtail" insurance, referring to trucking parlance for a tractor without a trailer. Although Braun paid the premiums for the Bobtail policy, Marck obtained the coverage and gave Braun a certificate of insurance. Apparently Braun never saw the actual policy.
Marck dispatched Braun from Marlon, Ohio to Massachusetts with a load of cargo over the Memorial Day weekend in 1988. The trip could not be made without a layover because the Monday (May 30th) holiday precluded delivery until Tuesday, May 31st.
Braun chose to layover at his parents' home in Wilton, Connecticut, parking the trailer in a commuter lot. On May 30th he was involved in a three vehicle accident while driving only the tractor ("bobtailing").
Jeffrey Lewis, operator of one of the vehicles, brought suit against Braun, Marck and the driver of the third vehicle. Braun reported the accident to his trucking carrier and his nontrucking carrier. Each refused to appear and defend CT Page 5751 claiming that defense and indemnity were the other carrier's responsibility. Braun hired counsel at his own expense, and after a year of litigation, impleaded third party defendant Continental National Indemnity Company (Continental), his nontrucking carrier. Braun's third party complaint alleges that Continental wrote a "bobtail" or nontrucking policy which made it liable to defend and indemnify him in this action.
Continental has moved for summary judgment on Braun's third party complaint claiming:
1. The language of the policy excludes coverage while the vehicle is under dispatch by a trucking company such as Marck even though Braun was not hauling at the time of the accident.
2. Under the applicable law of Ohio and Interstate Commerce Regulations, there is an irrebuttable presumption that Braun was operating as an employee of Marck at the time of the accident; therefore, only the trucking policy applies.
"In ruling on a motion for summary judgment, the court's function is not to decide issues of material fact, but rather to determine whether any such issues exist." Nolan v. Borkowski, 206 Conn. 495, 500 (1988). "A trial court may appropriately grant a motion for summary judgment only when the affidavits and evidence submitted in support of the motion demonstrate that there is no genuine issue of material fact remaining between the parties and that the moving party is entitled to judgment as a matter of law." Connecticut Practice Book 384; Catz v. Rubenstein, 201 Conn. 39, 48-49 (1986). The burden of showing the absence of any genuine issue of material fact is on the moving party. Fogarty v. Rashaw, 193 Conn. 442,445 (1984). In deciding a motion for summary judgment, the trial court is limited to considering the pleadings, affidavits, and other documentary proof submitted by the parties. Connecticut Practice Book 384; Orticelli v. Powers, 197 Conn. 9,15 (1985). The court must view the evidence in the light most favorable to the nonmovant. Nolan, 206 Conn. at 500.
I. CHOICE OF LAW
Continental claims that Ohio law should govern this insurance contract as it was made in Ohio and all the parties are from Ohio.
Under Ohio law, Braun would not be covered under his "bobtail" insurance. On April 20, 1991, the Ohio Supreme Court decided Wyckoff v. Marsh Brothers Trucking, 58 Ohio St.3d 261, holding that under Interstate Commerce Commission (I.C.C.) CT Page 5752 regulations there is an irrebuttable presumption of an employment relationship between a lessee trucking company and the driver of a vehicle which displays the I.C.C. placard[1]
of the lessee trucking company. This is also called the doctrine of statutory employment. See Section 2057.12(c)(1), Title 49, C.F.R. Cases construing that section have, in the majority, held that where a driver negligently causes an accident with a vehicle displaying an I.C.C. placard, the lessee trucking company is liable as a matter of law. The so-called minority view holds that display of the I.C.C. placard under a lease creates only a rebuttable presumption of an employment relationship between the trucking company and the driver. Traditional principals of agency and respondeat superior then determine if there was an employment relationship in fact. Under the majority view, now adopted by Ohio, "such liability attaches . . . even if the driver embarks on an undertaking of his or her own while using the carrier-lessee's I.C.C. authority. (Citations omitted.)" Wyckoff, supra, p. 265.
Braun argues that Connecticut law should apply because public policy dictates a choice of law favoring coverage rather than non-coverage. Contracts made in other states will not be enforced in Connecticut if such enforcement violates Connecticut public policy. See Ciampittello v. Campitello, 134 Conn. 51,54-56 (1947). Under Connecticut law, discussed post, there would be a duty to defend and, perhaps, indemnify.
Braun testified at a deposition that he worked out of terminals in Connecticut and New Jersey under his contract with Marck. Certainly the parties contemplated Braun's operation of the insured vehicle in Connecticut. Which law to apply is determined by where the policy is to be performed or have its beneficial operation. Baldwin Motors, Inc. v. Aetna Casualty and Sur. Co., 24 Conn. Sup. 498, 504 (1963). The beneficial operation, i.e., coverage for the risk, is certainly within the state of Connecticut where Braun regularly drove under Marck's orders.
The United States Supreme Court has held that where there is an ambulatory contract on which suit might be brought in any one of several states, a state having jurisdiction over a claim need not substitute the conflicting law of the contracting state for its own. Clay v. Sun Insurance office, 377 U.S. 179,12 L.Ed.2d 229 (1964). The Clay court saw no due process or full faith and credit problems in such a choice of law.
The carrier on the trucking policy has refused to defend and has not been made a party. Accepting defendant Continental's choice of Ohio law would mean that Braun would have to pay for his own defense and pay any judgment against him CT Page 5753 out of his own pocket[2] despite having insurance coverage for trucking and nontrucking use of the vehicle.
The court chooses to decide these issues under Connecticut law for public policy reasons, and thereby avoid such an anomalous result.
II. DUTY TO DEFEND
Braun maintains that under Connecticut law Continental has a duty to defend the claim by Lewis even if the accident is ultimately not covered under the terms of the policy. He argues that in Connecticut the duty to defend is different from the duty to indemnify. The court agrees.
The second count of Lewis' complaint alleges that Braun negligently caused the accident which resulted in his damages. There is no allegation that he was an agent, servant or employee of Marck or that the accident occurred while Braun was hauling cargo.
Where the complaint, on its face, appears to bring the accident within the provisions of the insurance policy, the insurer has a duty to provide a defense. Missionaries of Co. of Mary, Inc. v. Aetna Casualty and Surety Co., 155 Conn. 104, 110
(1967).
In Missionaries, supra, 110-112, the court said:
 "The duty to defend has a broader aspect than the duty to indemnify and does not depend upon whether the injured party will prevail against the insured. This general rule is practically universally recognized . . . . the generally accepted rule is that the duty to defend does not depend upon the insurer's ultimate liability to pay."
In Krevolin v. Dimmick, 39 Conn. Sup. 44, 45-48 (1983), the court held:
 ". . . the duty to defend must be exercised regardless of whether the original suit is totally groundless or regardless of whether, after full investigation, the insurer got information which categorically demonstrates that the alleged injury is not in fact covered."
Only the second count sounds against Braun. That CT Page 5754 count alleges that Braun owned and used a vehicle (undisputedly a covered vehicle) so as to cause bodily injury and property damage in an accident. The policy coverage provision at page two, section 1A states:
 We will pay all sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of a covered "auto."
As the allegations of this count bring the accident within the terms of the policy, Continental has a duty to defend.
III. DUTY TO INDEMNIFY
Whether Continental will be required to indemnify turns on the exclusion clause of the policy which states that the policy does not apply to:
 1. A covered auto when being maintained or used (i) under orders from or after being dispatched by any trucking company or lessee of such auto or (ii) under any permit, authority or operating rights granted by any governmental agency. . . . (Emphasis supplied.)
Whether either or both of the exclusions apply here are mixed questions of law and fact. Whether Braun was "under dispatch" during a layover can turn on many factual considerations. The same applies to whether Braun was operating under a permit from any governmental authority. The mere placement of a permit number on the vehicle, without more, does not resolve this question. Continental does not claim that Connecticut has adopted the statutory employment view of Wyckoff, supra. Whether Braun is personally liable because he was on a "frolic" and not involved in trucking activities also presents a question of material fact which the movant has not eliminated.
For the foregoing reasons, the motion for summary judgment is denied.
E. EUGENE SPEAR, JUDGE.